```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
UNITED STATES OF AMERICA,                                          :
                                                                   :
           -v-                                                     :     12-CR-556 (LTS)
                                                                   :
ANIBAL RAMOS,                                                      :     ORDER
                                                                   :
                              Defendant.                           :
                                                                   :
-------------------------------------------------------------------X
```

MEMORANDUM ORDER

The Court has received Defendant Anibal Ramos' motion for a reduction in sentence pursuant to 18 U.S.C. section 3582(c)(1)(A). (Docket entry no. 384.) On July 31, 2013, upon pleading guilty, Mr. Ramos was convicted of conspiracy to kidnap, kidnapping, and participating in a conspiracy to distribute and possess with intent to distribute 280 grams and more of crack cocaine and one kilogram and more of heroin, in violation of 18 U.S.C. section 1201 and 21 U.S.C. section 841(b)(1)(A). (Docket entry no. 133.) On January 28, 2016, the Court sentenced him principally to 120 months of imprisonment, followed by ten years of supervised release. (Docket entry no. 362.) In sentencing Mr. Ramos, the Court departed downward and sentenced him to the statutory minimum of ten years in light of Mr. Ramos' recovery from stage three colon cancer that had metastasized throughout his lymph nodes, and his 70% projected five-year cancer survival rate. (See Docket entry nos. 365, 393.) Mr. Ramos is currently incarcerated at United States Penitentiary Hazelton, and is due to be transferred to a Residential Reentry Center ("RRC") on either December 10 or 11, 2020.[1]

---

[1]  The Court notes that, in his supplemental submission, Mr. Ramos stated that he believed he was being transferred to an RRC in the Bronx on December 11, 2020. (Docket entry

Mr. Ramos, who is 46 years old, seeks a sentence of time served and to be released from custody of the Bureau of Prisons ("BOP"); Mr. Ramos does not seek placement in an RRC.  He argues principally that his medical conditions, in conjunction with the ongoing COVID-19 pandemic and the infection risks to which he would be subjected if he were placed in an RRC environment constitute "extraordinary and compelling reasons" to reduce his sentence to time served.  (Docket entry no. 393 at 1.)  Specifically, Mr. Ramos' medical vulnerability concerns arise from his remission from stage three colon cancer, as a result of which he must use a catheter to urinate; hypertension; moderate persistent asthma; obesity; and a potential new tumor near the site of his prior colon cancer.  (Id.; docket entry no. 399 at 3.)

On September 18, 2020, the Government filed its opposition to Mr. Ramos' motion.  (Docket entry no. 391, the "Opp.".)  On October 13, 2020, defense counsel filed a reply on Mr. Ramos' behalf.  (Docket entry no. 393, the "Reply".)  On October 14, 2020, the Court directed Mr. Ramos to file a supplemental submission addressing: 1) Mr. Ramos' release plan, including where he plans to reside, and how he expects to obtain financial support and continuity of medical care, should the court grant his motion; 2) whether or not Mr. Ramos poses a danger to the community, including evidence of his rehabilitation in prison, if any; and 3) the existence of the tumor that Mr. Ramos claims was detected in July 2020.  (Docket entry no. 394.)  Mr. Ramos filed his supplemental submission on November 20, 2020.  (Docket entry no. 399, "Ramos Supp. Subm.".)  The Government filed a response to the supplemental submission on December 2, 2020.  (Docket entry no. 400.)  The Court has considered carefully all of the

---

no. 399 at 2.)  The Government represents that Mr. Ramos is being transferred to an RRC in Brooklyn on December 10, 2020.  (Docket entry no. 400 at 3.)

parties' submissions and arguments and, for the following reasons, grants Mr. Ramos' motion for compassionate release.

## DISCUSSION

Mr. Ramos seeks an order directing his compassionate release under 18 U.S.C. section 3582(c)(1)(A), which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 116-193).[2] The Court therefore considers "the factors set forth in section 3553(a) to the extent that they are applicable," and then considers, in light of those factors, whether the Defendant's proffered "extraordinary and compelling reasons" for a sentence reduction warrant such a reduction. The Court may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release" in determining whether those reasons warrant a sentence reduction. United States v. Brooker, 979 F.3d 228 (2d Cir. 2020). "The defendant has the burden to show that he is entitled to a sentence reduction" under Section 3582(c)(1)(A). United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

The Court's consideration of the section 3553(a) factors at the time of Mr. Ramos' sentencing hearing, on January 28, 2016, is reflected in the transcript of that hearing.

---

[2] The Government does not dispute that Mr. Ramos has satisfied section 3582(c)(1)(A)'s exhaustion requirement. (See Opp. at 14.)

Docket entry no. 365, "Sent. Tr.".³  As to the nature and circumstances of the offense, the Court noted that Mr. Ramos committed a serious crime, was "in a leadership role for many years in a long-running narcotics trafficking organization that plagued an entire block in the Bronx and was personally involved in the kidnapping and torture of a young man," which demonstrated "a callous disregard for human life." Id. at 26-27.  The Court also acknowledged that Mr. Ramos had pulled back from the drug trade and found credible his representation that he was working to separate himself from the world of the drug trade as well as his genuine remorse and "deep regret" for his actions. Id. at 27.  In light of those factors, Mr. Ramos' "very difficult upbringing and personal history," and his deteriorating health as a result of his stage three colon cancer, which was treated by surgery, resulted in significant post-surgical complications, and was followed by two courses of chemotherapy, the Court found that a significant downward departure was necessary to achieve a sentence that was reasonable, appropriate, sufficient and no greater than necessary to address the statutory purposes of sentencing. Id. at 29.  Accordingly, the Court sentenced Mr. Ramos to the mandatory minimum of 120 months of incarceration, as well as a ten-year term of supervised release. Id. at 29-30.

---

³     The sentencing factors set forth in 18 U.S.C. section 3553(a) are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ; (5) any pertinent policy statement [issued by the Sentencing Commission in effect on the date the defendant is sentenced]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C.A. § 3553(a) (Westlaw through P.L. 116-193).

In the approximately five years since Mr. Ramos' sentencing, he has completed victim impact, anger management, and gamblers anonymous programs, and has applied and been accepted as a member of the "Honor Block" — a section of the prison housing unit that provides additional programming for inmates. Ramos Supp. Subm. at 3. Although his disciplinary record in BOP custody has not been perfect, his infractions have been few and his record has been clean since May 2018. See Opp. at 7. Moreover, although Mr. Ramos has survived his time in prison despite the relatively low projected cancer survival rate at the time of his sentencing and his cancer remains in remission, he continues to suffer from persisting health concerns, including obesity and moderate asthma, that elevate his risks of suffering grave effects of contracting COVID-19. The Court considers these facts in weighing Mr. Ramos' history and characteristics for the purposes of this motion, as well as the fact that Mr. Ramos has nearly completed his time in custody and is scheduled to be transferred to an RRC imminently, as a result of good time credit earned.

With these section 3553(a) factors in mind, the Court next considers whether extraordinary and compelling reasons warrant a reduction in Mr. Ramos' sentence to time served. In his supplemental submission, Mr. Ramos explains that he seeks to avoid placement in an RRC because it may result in him facing a continued, and perhaps greater, risk of contracting the COVID-19 virus in a congregate environment. See United States v. White, No. 16-cr-82 (VEC), 2020 WL 6683076, at *2 (S.D.N.Y. Nov. 12, 2020) (acknowledging that the defendant "may face enhanced risk to COVID-19 at" an RRC because "halfway houses are uniquely positioned to be vectors for the virus, as residents arrive from different prisons and staff and residents come in and out throughout the day and night.") (internal quotation omitted). Mr. Ramos submits that, if his application for compassionate release is granted, he would

"immediately have a source of employment, a place to live, and the support and encouragement of his longest friend" who has already arranged to provide Mr. Ramos with a paying job and a place to live in Kissimmee, Florida, to assist with Mr. Ramos' transition to community life. See Ramos Supp. Subm. at 2. Additionally, Mr. Ramos plans to enroll in Medicaid to obtain continuity of medical care. Id. at 3. The Court finds that Mr. Ramos' expressed wish to establish a new life in Florida, far away from the Bronx and the world of the drug trade in which he committed his serious underlying crimes, and his well thought out and concrete release plan for doing so, are consistent with the genuine remorse for his actions and desire to establish a new life free of criminal activity that he articulated during his sentencing in 2016.

In light of the facts that Mr. Ramos suffers from several medical conditions that render him highly susceptible to potentially lethal effects of COVID-19, his completion of his time in custody for the convictions underlying his sentence, his likely inability to manage measures to socially distance himself from others in an RRC setting, his expressed remorse for his actions and desire to start a new life away from the neighborhood where he was arrested, and his well thought out re-entry plan, the Court finds that extraordinary and compelling reasons exist warranting a reduction in Mr. Ramos' custodial sentence to time served. In order to ensure a careful re-entry and promote protection of the public during Mr. Ramos' transition, the Court will impose an additional special supervised release period of six months, during which Mr. Ramos will be subject to home detention as well as the other conditions originally set for his supervised release. The special period of supervised release will be followed by the supervised release period that was previously imposed.

CONCLUSION

For the reasons set forth above, Mr. Ramos' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) is granted.  Mr. Ramos' sentence is hereby shortened to time served plus whatever time is reasonably necessary to confirm that there is an approved residence and make arrangements for him to travel to Florida safely.

Upon release, Defendant shall serve an additional special period of six months of supervised release, during which he will be subject to the special conditions set forth in the judgment entered in this case on January 28, 2016 (docket entry no. 362, the "Judgment"), and an additional special condition of six months of home detention.  During the home detention period, Mr. Ramos may leave the approved residence only for work, medical treatment, and other activities approved by the United States Probation Office for the Middle District of Florida.  Following the completion of the special period of supervised release, Mr. Ramos will commence service of the ten-year supervision period that was imposed on him by the Judgment, subject to the special conditions set forth therein.

An Order on Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) will also be entered.  This Memorandum Order resolves docket entry nos. 384 and 399.

SO ORDERED.

Dated: December 4, 2020
         New York, New York

                                          /s/ Laura Taylor Swain
                                          LAURA TAYLOR SWAIN
                                          United States District Judge